**N.W.S. MICHIGAN, INC.,**
**Plaintiff–Appellant,**

v.

**GENERAL WINE & LIQUOR COMPANY, INC., Defendant–Appellee.**

**No. 01–1975.**

United States Court of Appeals, Sixth Circuit.

Feb. 6, 2003.

Before RYAN, CLAY, and GIBBONS, Circuit Judges.

RYAN, Circuit Judge.

In this private antitrust suit for damages and injunctive relief under the Clayton Act, 15 U.S.C. §§ 15, 26, the plaintiff, N.W.S. Michigan, Inc., appeals from the district court's order dismissing the case pursuant to Fed.R.Civ.P. 12(b)(6). The sole issue on appeal is whether NWS alleged anticompetitive injury, a necessary element of antitrust standing. For the following reasons, we hold that NWS did not allege anticompetitive injury and, therefore, does not have standing. Accordingly, we AFFIRM the district court's decision to dismiss the case.

I.

NWS and the defendant, General Wine & Liquor Company, Inc., compete in Michigan's liquor distribution market. In the spirits segment of the market both companies serve as authorized distribution agents (ADAs). In the wine segment of the market, both companies are licensed wine wholesalers, providing warehousing and distribution services to wine suppliers.

In Michigan, a detailed regulatory scheme governs the vertical business relations within the liquor distribution market. Neither ADAs nor wine wholesalers are permitted to have any direct or indirect interest in other vendors within the distribution chain. Mich. Comp. Laws §§ 436.1205(3), 436.1603(1) (West Supp. 2002 & 2001). ADAs and wine wholesalers also are prohibited from "aid[ing] or assist[ing] any other vendor by gift, loan of money or property of any description, or other valuable thing, or by the giving of premiums or rebates." Mich. Comp. Laws § 436.1609 (2001); *see also* Mich. Admin. Code r. 436.1035 (1999).

Additional restrictions apply to companies like NWS and General Wine that are authorized to serve as *both* an ADA for spirits and a wholesaler for wine. Pursuant to Mich. Comp. Laws § 436.1205(3), these dual service distributors may not sell a brand of wine in a sales territory in which another wine wholesaler already sells the same brand. Central to the present dispute, however, the provision contains a grandfather clause exempting any company that served as a wine wholesaler for a particular brand in the relevant territory on or before September 24, 1996. Mich. Comp. Laws § 436.1205(3). Thus, dual service distributors that do not qualify under the grandfather clause cannot compete with respect to a particular brand of wine within a territory already occupied by another wine wholesaler.

Unfortunately for NWS, it did not become a licensed wine wholesaler in Michigan until after September 24, 1996. General Wine, on the other hand, was well-established as a wine wholesaler in Michigan prior to September 24, 1996, and therefore enjoys a distinct competitive advantage over NWS in dealing with dual suppliers, companies that supply both wine and spirits. NWS claims that General Wine is violating Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, by using this privileged status to leverage its dominant position in the wine market into the spirits market. Specifically, NWS alleges that General Wine is enticing dual suppliers to enter into exclusive contracts by promising to (1) "rebate or kick-back" a portion of a per-case ADA fee in the form of advertising of the dual suppliers' products and (2) pass on the cost savings associated with being able to store and trans-

port the dual suppliers' spirits and wine products together. NWS alleges that these practices violate the Michigan laws and regulations · restricting vertical integration within the industry. According to NWS, General Wine's conduct has caused NWS to lose four suppliers, accounting for about 455,000 cases and $4 million annually.

The district court analyzed NWS's antitrust claim as an attack against General Wine's pricing practices. Relying on *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990), the court determined that, "because NWS is a competitor and its complaint is about pricing practices, ... NWS must allege that General Wine engaged in predatory pricing in order to demonstrate antitrust injury." *N.W.S. Michigan, Inc. v. Gen. Wine & Liquor Co.*, No. 4:00–CV–179, 2001 WL 822337, at *5 (W.D.Mich. June 6, 2001). The court dismissed the case because NWS failed to allege predatory pricing and, as a result, did not have standing.

## II.

We "review[ ] de novo a district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Downie v. City of Middleburg Heights*, 301 F.3d 688, 693 (6th Cir.2002). We "treat[ ] all well-pleaded allegations in the complaint as true, and ... find[ ] dismissal proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Id.* (internal quotation marks and citation omitted).

NWS contends primarily that it did not need to allege predatory pricing to satisfy the antitrust injury requirement, since General Wine's conduct independently violated Michigan's liquor distribution laws. General Wine responds that a private plaintiff must allege predatory pricing to have standing to raise an antitrust challenge to a competitor's pricing practices. We conclude that NWS does not have standing because it failed to allege predatory pricing.

A private party suing for damages or injunctive relief under the Clayton Act must demonstrate "antitrust standing." *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 976 (6th Cir. 2000), *cert. denied*, 533 U.S. 964, 121 S.Ct. 2623, 150 L.Ed.2d 776 (2001). A key element of antitrust standing is " 'antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.' " *Valley Prods. Co. v. Landmark*, 128 F.3d 398, 402 (6th Cir.1997) (emphasis omitted) (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)). Antitrust injury is more than mere economic injury, since "[t]he purpose of the [Sherman] Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993). For antitrust claims based on pricing practices, the Supreme Court has adopted a strict antitrust injury rule requiring plaintiffs to allege predatory pricing. *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222–23, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993); *Atlantic Richfield*, 495 U.S. at 339, 110 S.Ct. 1884. When a private plaintiff complains about a defendant's prices, "only predatory pricing has the requisite anticompetitive effect" to establish antitrust injury. *Atlantic Richfield*, 495 U.S. at 339, 110 S.Ct. 1884. The economic rationale for emphasizing predatory pricing is clear: "Low prices benefit consumers regardless of how

those prices are set, and so long as they are above predatory levels, they do not threaten competition." *Id.* at 340, 110 S.Ct. 1884.

The Supreme Court defines a "predatory" price generally as one that is "below an appropriate measure of ... costs." *Brooke Group*, 509 U.S. at 222, 113 S.Ct. 2578. The Ninth Circuit, however, has recognized a narrow exception to this general definitior, of predation for situations in which a competitor charges prices that are above its costs yet below the rates established by a price or tariff schedule. *See Cost Mgmt. Servs., Inc. v. Washington Natural Gas Co.*, 99 F.3d 937, 954 (9th Cir.1996); *Farley Transp. Co. v. Sante Fe Trail Transp. Co.*, 786 F.2d 1342, 1347–48 (9th Cir.1985); *Western Concrete Structures Co. v. Mitsui & Co.*, 760 F.2d 1013, 1016–18 (9th Cir.1985).

Contrary to NWS's contention, its claim relates to General Wine's pricing practices. NWS alleges nothing more than an inability to compete with the low prices offered by General Wine to dual suppliers through the rebates and sharing of cost savings. Consequently, as made clear in *Atlantic Richfield* and *Brooke Group*, General Wine's pricing practices are anticompetitive only if the company set its prices at predatory levels. NWS, however, does not allege predatory pricing. At most, NWS alleges that General Wine employed an unlawful mechanism to deliver its low prices to dual suppliers. Whether or not General Wine's pricing mechanism violated state law, the prices themselves simply reflect the storage and transportation efficiencies available to General Wine by virtue of its privileged status. NWS does not allege that the prices were set at anticompetitive levels, and this omission requires dismissal even under the Ninth Circuit's somewhat unique theory of above-cost predatory pricing, the merits of which we do not address. NWS may have cause for requesting relief from the Michigan legislature; it may even have a claim that General Wine violated state law. But because NWS does not allege anticompetitive injury as a result of General Wine's pricing practices, it does not have antitrust standing.

### III.

For the foregoing reasons, we AFFIRM the district court's judgment.